UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOAN LAFFERTY,

          Plaintiff,

v.

PROVIDENCE HEALTH PLANS AND
EUGENE FREEZING AND STORAGE
GROUP HEALTH PLAN,

          Defendant.

08-CV-6318-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

Plaintiff, Joan Lafferty, filed this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC §§ 1001-1461, to obtain coverage for high-dose chemotherapy enhanced by Blood Brain Barrier Disruption (BBBD) treatment to treat her primary central nervous system lymphoma (PCNSL)[1], a rare malignant brain cancer. The parties filed cross motions for judgment under Fed. R. Civ. P. 52, and by Order and Opinion filed on April 12, 2010, I granted

---

[1] PCNSL is also referred to as primary CNS lymphoma in the record.

Page 1 - OPINION AND ORDER

Lafferty's motion and denied defendants' motion. Defendants filed a Motion for Reconsideration (dkt. #106) on May 3, 2010. I held oral argument on defendants' motion on June 23, 2010. At the conclusion, I announced that I denied defendants' motion for reconsideration. I issue this written opinion to clarify my reasons for denying defendants' motion.

## Standard

I construe defendants' motion as a motion for reconsideration under Rule 60(b), which sets forth the grounds upon which a motion for relief from an order or judgment may be made. In general, motions for reconsideration should not be frequently made or freely granted. Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1980). "'[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n. 5 (9th Cir.1989) (quoting United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir.1970)).

## Discussion

Defendants assert that I must reconsider my April 12, 2010 Opinion and Order in light of the Supreme Court's decision in Conkright v. Frommert, __U.S.__, 2010 WL 1558979 (2010). Specifically, defendants argue that Conkright abrogated Abatie v. Alta Health and Life Ins. Co., 458 F.3d 955, 971 (9th Cir. 2006).

In Conkright, ERISA pension benefit plan participants sued the Plan Administrator and others for improper calculation of their benefits. Id. 2010 WL 1558979 at *5. The Plan Administrator had interpreted the Plan to require calculation of benefits using what came to be called the "phantom account" method. Id. The District Court granted summary judgment for the plan.

Page 2 - OPINION AND ORDER

The Second Circuit reversed and remanded, holding that the Plan Administrator's interpretation had been unreasonable and plan participants were not given adequate notice of the "phantom account" benefit calculation method. Id. On remand, the District Court did not apply a deferential standard of review, nor accept the Plan Administrator's interpretation; instead it adopted a different methodology. On Appeal, the Second Circuit affirmed in relevant part, holding that the District Court was correct not to apply a deferential standard on remand. Id. The Supreme Court rejected "this 'one-strike-and-you're-out' approach." Conkright, 2010 WL 1558979 at *6. The court noted that ERISA's interests in "efficiency, predictability, and uniformity in the manner in which they are promoted by deference to reasonable plan construction by administrators, do not suddenly disappear because a plan administrator made a single honest mistake." Conkright, 2010 WL 1558979 at *7.

I cannot agree with defendants' assertion that Conkright abrogated Abatie's holding. In Conkright, the court held that a Plan Administrator's single, honest mistake does not strip a Plan Administrator of deference. Id. 2010 WL 1558979 at *9-10. Abatie similarly requires that a court "should give the administrator's decision broad deference notwithstanding a minor irregularity." Id., 458 F.3d at 972. If anything, Conkright reinforces the basic themes of the main cases over the years related to whether a Plan Administrator is entitled to deference: that deferential review is to be applied; that lower courts are not to deviate from it on ad hoc rationales; and that deferential review is a necessary element of the balancing act between employee rights and the need to encourage employers to provide benefits plans. Conkright, 2010 WL 1558979 at *7. Instead of changing the controlling law, Conkright reaffirmed it. See e.g., Conkright, 2010 WL 1558979 at *9 (noting that it would be inappropriate to defer to a Plan Administrator's interpretation when he does not exercise his discretion fairly or honestly or is too incompetent to exercise his discretion fairly). Accordingly,

Page 3 - OPINION AND ORDER

there are no grounds for reconsideration of my April 12, 2010 Opinion and Order.

Even assuming arguendo that Conkright had changed existing law, application of Conkright's holding would not change the result here. In Conkright, the Supreme Court rejected the notion that a single honest mistake had infected the ERISA review process. Conkright, 2010 WL 1558979 at *7. The instant case is not a case about a single mistake. Instead, significant procedural irregularities throughout Providence's internal review process altered the relationship between Providence and Lafferty, deprived Lafferty of her right to appeal, and caused her substantive harm. For example, Dr. Corn signed the denial of Lafferty's initial grievance and participated on the Grievance Committee that denied Lafferty's second appeal as an advisor to other committee members--potentially influencing the votes of others on the committee. After participating in two levels of the review process, Dr. Corn coordinated further medical review of Lafferty's claim; selecting the material to go to the reviewer and communicating with the reviewer regarding the scope of the review. Other Providence employees similarly participated in more than one level of review. In short, the instant case is not a case where "one honest mistake" resulted in a Plan Administrator being stripped of deference. The record reflects that numerous procedural irregularities violated ERISA's regulations.

Defendants' argument that reconsideration of my Opinion and Order under Conkright and subsequent review applying the de novo standard of review would result in uniformity in benefit determinations is not persuasive. The underlying record establishes that other patients insured by Providence were approved for high-dose chemotherapy enhanced by the BBBD drug, Mannitol. (Defs' Supp. Mem. in Support of Mot. for J. at 3-5 (dkt. # 72)). Providence argued that those patients were approved for BBBD enhanced chemotherapy because of Providence's discretion, i.e.

Page 4 - OPINION AND ORDER

compassion. (Id. at 5). Providence argued that: "if the end result of Providence's compassion for [the patient] were that Providence waived any argument that BBBD is investigational/experimental and not covered for another patient differently situated, this Court would create a perverse incentive for Providence to never make an exception to its policies...." Id. at 5. Thus, if I had deferred to the Plan Administrator, some insured by Providence would be granted an exception to its policies and receive coverage for BBBD treatment, while others would not. For example, Providence Health Plans Medical Review Manager, Cynthia Smith, RN, stated in an internal Providence email that Providence reviews claims for BBBD services on a "case by case basis." (SR 202). Ms. Smith "[had] Rick Turnbow run the CPT code. In the last three years, we have had 145 requests and 24 have been approved and paid." (SR 202).

Such exceptions, purely at the discretion of the Plan Administrator do not promote uniformity in benefit determinations. Moreover, it is clear that in Conkright, the Supreme Court was concerned with consistent interpretation of Plan terms rather than benefit determinations. Conkright, 2010 WL 1558979 at *8-9 (stating "if other courts were to adopt an interpretation of the Plan that does account for the time value of money, Xerox would be placed in an impossible situation. Similar Xerox employees could be entitled to different benefits depending on where they live, or perhaps where they bring legal action.") Here, my order analyzed what benefits Lafferty was due under the plan terms; it did not, however, interpret the terms of the plan.

Finally, even if I were to reconsider my April 12, 2010 Opinion and Order and apply an abuse of discretion standard to my review of this case, the result would not be significantly different. In my order, I found that "Providence abused its discretion by denying Lafferty coverage for services which were obviously covered (and considered by Providence to be the standard of care) under the

Policy." (Opinion and Order at 22 (dkt. #103)). The record established that Lafferty received intra-arterial high-dose methotrexate chemotherapy for her tumor. Id. at 21. The Policy covers chemotherapy. Id. Hospital and skilled nursing services, including semi-private room accommodations, intensive care, medications, x-rays, and laboratory services are also covered under the Policy. Id. It is not disputed that high-dose methotrexate is the "standard of care for treating primary central nervous system lymphoma." Id. The record established that Lafferty's high-dose methotrexate chemotherapy would have been performed in substantially the same manner even if Mannitol had not been used to disrupt the blood-brain barrier. Id. The record establishes that Lafferty's hospitalization was not required solely because of the BBBD treatment—which consisted of administering Mannitol to disrupt the blood-brain barrier. Id. Instead, Lafferty was hospitalized due to the potential toxicity of the high-dose methotrexate chemotherapy. Id. Based on this, I found that it was an abuse of discretion for Providence to deny coverage for care which the Plan Administrator recognized was the standard for PCNSL. Id. at 21-22. I further noted that Providence's refusal to cover Lafferty's chemotherapy and related hospitalization services was especially troubling given Providence's reliance on the U.S. Center's for Medicare and Medicaid Services' (Medicare) determination regarding BBBD coverage. Id. Medicare determined that BBBD is not reasonably necessary. However, the record clearly establishes that Medicare's determination "does not alter in any manner the coverage of anticancer therapy;" meaning that Medicare covers its insured's cancer treatment charges, except for the charges for Mannitol. Id. Even relying on Medicare's determination, Providence still should have covered all of Lafferty's

cancer treatment charges, except for the Mannitol.[2] Thus, even under an abuse of discretion standard, I could not uphold the Providence's Plan Administrator's decision to deny Lafferty coverage for her high-dose chemotherapy and related hospitalization charges.

## Conclusion

For the reasons above, I deny defendants' Motion for Reconsideration. (Dkt. #106).

IT IS SO ORDERED

DATED this 25th day of June 2010.

THOMAS M. COFFIN
United States Magistrate Judge

---

[2] A review of exhibit A to Melissa Dhone's Affidavit, which is the billing history of another OHSU patient who received anticancer treatment enhanced by BBBD treatment in 2007, reveals that the charge for her Mannitol infusion was approximately $972.00/per treatment. Ms. Dhone's affidavit discusses Medicare's payment for another patient's BBBD enhanced anticancer treatment. Out of an adjusted total cost of $73,463, the Mannitol charges were approximately $7,776.00. (Melissa Dhone Aff., Ex. A at 1 (dkt. 69). It is not possible for the court to separate the charges for Ms. Lafferty's treatment. The court was not provided with a copy of Ms. Lafferty's billing history, and the parties Stipulated Statement of Benefits Unpaid on Plaintiff's Claims (dkt. #117) includes only lump sum amounts.

Page 7 - OPINION AND ORDER