FILED '11 JAN 13 10:11 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOAN LAFFERTY,                                                               08-CV-6318-TC

        Plaintiff,

        v.                                                                           ORDER

PROVIDENCE HEALTH PLANS AND
EUGENE FREEZING AND STORAGE
GROUP HEALTH PLAN,

        Defendant.

COFFIN, Magistrate Judge:

    Currently before me is plaintiff Joan Lafferty's motion for attorneys' fees and costs pursuant to 29 U.S.C. § 1132 (g) for time and costs expended by her attorneys in the above captioned Employee Retirement Income Security Act (ERISA) action. Defendants Providence Health Plans and Eugene Freezing and Storage Group Health Plan (collectively referred to as Providence) oppose Lafferty's motion, urging a complete denial of the motion, or, in the alternative, a significantly reduced award. For the reasons below, I grant Lafferty's motion with a reduction in fees.

///

Page 1 - ORDER

## Background

Lafferty brought this action seeking coverage for high dose chemotherapy enhanced by blood brain barrier disruption (BBBD) to treat her rare, malignant brain cancer. On April 12, 2010, I granted Lafferty's Rule 52 motion for summary judgment (dkt. #103) and ordered Providence to pay for Lafferty's treatment. I denied Providence's subsequent motion for reconsideration. (dkt. #120). In her attorneys' fees and costs motion, Lafferty seeks fees in the amount of $158, 463.75[1] and costs of $389.[2]

Providence argues that, while Lafferty has established "some degree of success on the merits," the five-factor fee award test utilized by the Ninth Circuit weighs against an award of attorneys' fees and costs. Providence does not dispute the amount claimed in Lafferty's January 11, 2011 cost bill. See e.g. dkt. 152 at 8 ("To the extent the Court awards any costs, they should be limited to...(1) the filing fee of $350, (2) the process server of $39.00, and (3) the oral argument transcript of $391.50).

---

[1] This reflects fees for 633.1 hours of work by attorney John Shaw. Although Lafferty originally asserted that Shaw expended 651 hours, she agrees with Providence that the correct number of hours for Shaw is 633.1. (dkt. #154 at 8, n. 5). This amount also reflects an anticipated 15 hours of work at $300/hour done by Megan Glor in preparing Lafferty's reply to Providence's opposition to the fees and costs motion. In her Amended Declaration (dkt. #142) Glor requested different additional fee amounts: $4,500 and $5,500. Based on multiplying 15 by 300, it appears that the $5,500 is a mathematical error. Additionally, Glor stated that she would "provide the precise time entries for the additional amount" when she filed Lafferty's reply. I have, however, reviewed the reply, supporting declaration and exhibit (dkt. #s 154, 155, 155-1), and I cannot find any mention of precisely how much time Glor spent preparing Lafferty's reply.

[2] Lafferty original sought costs of $4, 533.66. Providence objected on the grounds that Lafferty failed to submit a cost bill as required by statute and, even if she had submitted such, that many of her costs were not recoverable. I agreed that a cost bill was required and ordered Lafferty to submit a cost bill. (dkt. #156). On January 11, 2011 Lafferty submitted a cost bill for $389.

Page 2 - ORDER

## Discussion

### I. Entitlement to Fees

In an ERISA action, a court has discretion to award attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1). The Ninth Circuit uses a five-favor to determine whether to allow an ERISA fee award. Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980). The five Hummell factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. Id., 634 F.2d at 453. A court should apply the Hummell factors with the remedial purposes of ERISA in mind. Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 589 (9th Cir. 1984). "As a general rule, ERISA participants should be entitled to a reasonable attorneys' fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). No one of the Hummell factors is necessarily decisive and some may not be pertinent in a given case. Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir.1984). Instead, the five factors reflect a balancing and not all factors must weigh in favor of a fee award. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1172 (9th Cir. 1999).

Lafferty correctly points out that a finding of bad faith is not required for an award of fees and costs. Smith, 746 F.2d at 590. Although I found that Providence failed to follow applicable procedures, resulting in flagrant ERISA violations and also found that Providence abused its

Page 3 - ORDER

discretion in denying Lafferty coverage for high dose chemotherapy, which was a covered benefit under the Plan's terms (dkt. #103 at 11 and 22), I do not find any evidence that Providence acted with bad faith in this matter. I find that this factor is neutral–neither in favor nor against a fee award. Providence concedes that it has the ability to satisfy a fee award. (dkt. #152 at 3). This factor weighs in favor of an award.[3]

The next factor–deterrence, requires the court to consider whether an award against Providence would deter others from similar conduct in the future. Lafferty contends that an award would deter insurers from making unreasonable decisions and would encourage more careful investigation and evaluation of claims. See e.g., Smith, 746 F.2d at 590 ("An award of reasonable attorney's fees would deter [insurers] from opposing employee participant claims if the amount of the claim and reasonableness of the employee's claims are such that the plaintiff's chances of success are great."); McElwaine, 176 F.3d at 1173 ("A fee award would deter other [insurers] from forcing beneficiaries to undertake costly litigation to preserve their claims.") Providence argues that an award could deter other insurers from acting in good faith. See dkt. #152 at 3 ("Third, given Providence's good faith actions, the Court should not deter others from acting in good faith."). In my Opinion and Order granting Lafferty's motion for judgment, I observed that Providence recognized high dose methotrexate-based chemotherapy (which was administered to Lafferty) to be the "standard of care" for Lafferty's type of brain cancer. (dkt. #103 at 21). I noted that Providence's refusal to pay for this covered service--despite its determination that the blood brain barrier disruption was not covered, was an abuse of discretion. Id. at 21-22. Indeed, Providence has

---

[3] "Based on this factor alone, absent special circumstances, a prevailing ERISA employee should ordinarily receive attorney's fees from the defendant." Smith, 746 F.2d at 590.

Page 4 - ORDER

never explained why it was justified in refusing to pay for Lafferty's covered high dose chemotherapy. (dkt. 151 at 3-4). Additionally, I found that significant procedural irregularities throughout Providence's internal review process altered the relationship between Providence and Lafferty, depriving Lafferty of her right to appeal, and caused her substantive harm. (dkt. #120 at 4). I do not find that an award of fees and costs would deter insurers from acting in good faith. Instead, I find that an award of fees could deter other insurers from declining to pay for covered services–even if they conclude that other services offered in conjunction with the covered services are not necessary. An award may also encourage other insurers to ensure that the internal review process is free of significant procedural irregularities. The deterrence factor weighs in favor of a fee award.

The next factor is the benefit to all plan participants or resolution of a significant legal question. Lafferty argues that the result in this case will particularly benefit litigants who seek coverage for treatments for rare medical conditions which have treatments that have not undergone phase III trials. Providence counters that Lafferty brought suit only to secure benefits for herself, thus the result could not benefit others. Although Lafferty brought this action to benefit herself, I agree that her suit could benefit ERISA plan participants and beneficiaries by helping to resolve whether an insurer must pay for covered services if those covered services are combined with an "experimental" treatment deemed unnecessary by the insurer. I also agree with Lafferty that the decision here may prove instructive for future cases involving coverage for treatments for rare conditions which have not undergone phase III trials. See dkt #103 at pp. 22-28 (explaining why Providence did not meet its burden of establishing that the blood brain barrier disruption treatment was "experimental."). This factor weighs in favor of awarding Lafferty attorneys' fees.

Page 5 - ORDER

The final factor is the relative merits of the parties' positions. Lafferty contends that this factor weighs in her favor as Providence's position lacked merit. Providence argues that this factor is neutral because the court found merit in both parties arguments–specifically I found for Providence that silence in the Summary Plan Description did not change the review standard while finding for Lafferty that she was entitled to benefits. In light of my observation that Providence has never articulated any justification for refusing to pay for Lafferty's covered benefit of high dose chemotherapy, I conclude that the relative merits factor weighs in Lafferty's favor. Smith, 746 F.2d at 590 ("the relative merits of the parties' positions...is, in the final analysis, the result obtained by plaintiff."). Thus, this factor weighs in favor of a fee award.

After balancing the Hummell factors and finding no special circumstances which would render an award of attorneys' fees unjust, I exercise my discretion and award Lafferty reasonable attorneys' fees as set forth below.

## II.   Reasonable Attorney Fees

As noted above, Lafferty seeks fees in the amount of $158, 463.75 based on: 208.6 hours of work at $250/hour or $275/hour[4] by attorney Megan Glor; 633.1 hours of work at $150/hour by attorney John Shaw; 4.25 hours of work at $125/hour by paralegal/law clerk Emily Christiansen; and an additional 15 hours of work at $300/hour which Glor anticipated for preparing the reply to Providence's opposition to the fees and costs motion. Providence argues that the amount of fees sought are unreasonable, particularly the fees sought by Shaw. Providence points out that the other attorneys–both for Providence and Lafferty worked a combined total of 504.2 hours. In contrast,

---

[4]Glor's time is billed at both $250/hour and $275/hour. See e.g., billing entries of 12/22/2008 and 1/05/2009.

Page 6 - ORDER

Shaw alone worked 633.1 hours on the case. (dkt. #153 at 4). Providence argues that Shaw spent an extraordinary amount of time on tasks; for example Shaw spent 67.9 hours assisting Glor in preparing for oral argument. In contrast, Providence's associate attorney spent 5.8 hours assisting in oral argument preparation. Shaw spent 136.8 hours preparing a motion for judgement in contrast to the 48.8 hours that Providence spent preparing its own motion and response. (dkt. 152 at 6). Providence also argues that Lafferty should not recover for time spent pursuing arguments which she lost–such as her argument that silence in the Summary Plan Description changed the standard of review.

Attorneys' fees in ERISA cases are calculated using a hybrid lodestar/multiplier approach. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000); McElwaine, 176 F.3d at 1173. First, the court determines the "lodestar" amount by multiplying the number of reasonable hours expended on the litigation by a reasonable hourly rate. VanGerwen, 214 F.3d at 1045. The party seeking the fee award must supply evidence supporting the number of hours worked and the rate claimed. Id. The court may then adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. Id. Hours that are excessive, redundant, or otherwise unnecessary should be excluded from an award of fees. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Providence does not dispute the reasonableness of the Lafferty's attorneys' hourly billing rates. Thus, I find that Lafferty is entitled to the $250/hour and $275/hour rate for Glor, the $300/hour rate for 15 hours of Glor's time, the $150/hour rate for Shaw, and the $125/hour rate for paralegal Christiansen.

    A.    **<u>Excessive Hours</u>**

As noted above, Providence argues that Shaw billed excessive hours. I agree that Shaw spent

an excessive amount of time (61.7 hours by my calculations[5]) assisting Glor in preparing for oral argument. I have exhaustively reviewed Lafferty's statement of attorney fees and costs, and I observe that Glor spent 4 hours at the beginning of her firm's representation of Lafferty consulting with the Lafferty's about representation, claim review, and strategy. (dkt. #142-1 at 1-2). Glor spent another 4.3 hours preparing and proofreading the complaint and drafting a letter to the Lafferty's regarding an "overview of what to expect in litigation." (Id. at 5). Glor spent 1.3 hours reviewing and revising the introduction to Lafferty's opening brief, 4.6 hours reviewing and revising the statement of facts and another 8.9 hours reviewing and revising the legal discussion, including three conferences with Shaw. (Id. at 13-14). In other words, as reflected by the fees statement, it is clear that Glor was very involved with and familiar with this litigation. I find that it is excessive and unreasonable for an associate attorney to spend 61.7 hours assisting an attorney of Glor's skill level and involvement in preparing for oral argument. I reduce the hours billed by Shaw in relation to preparing for oral argument to 6 hours–a reduction of 55.7 hours.[6] This reduces Shaw's hours to 577.4 hours.

Providence contends the hours Shaw spent preparing a motion for judgment (which Lafferty most often categorizes as "Opening Brief" in the statement of fees) were excessive. I find it somewhat difficult to criticize the amount of time spent preparing the opening brief given the fact-intensive nature of ERISA cases and the complexity of the record in this case. Moreover, it is hard to second guess the efforts by Lafferty's attorney, particularly when these efforts eventually

---

[5] I added billings from 10/1/2009 through 10/14/2009 (dkt. 142-1 at 20-21) to arrive at my conclusion that Shaw spent 61.7 hours assisting Glor in preparing for oral argument.

[6] I note this leaves intact Glor's 4 hour billing for a "lengthy discussion with John Shaw in preparation for argument." (dkt. 142-1 at 21).

succeeded. Despite these misgivings, I do find it troubling that, on top of the 136.8 hours Shaw spent on preparing the opening brief, Glor billed 24.3 hours for reviewing, revising, and discussing the opening brief with Shaw. In other words, even though Shaw spent 136.8 hours (3 weeks and 2 days assuming a 40/hour week and 8/hour day) preparing the opening brief, Glor also spent an additional 3 days reviewing and revising it. Moreover, Shaw spent 6.1 (or nearly a day) of the 136.8 hours billed "[r]eview[ing] Megan Glor's revisions to Opening Brief and edit[ing]/revis[ing]." Even given the complexity of this case, I find this billing excessive.

Likewise, I find other billings by Shaw excessive. To give one other example, Shaw billed 0.9 hours for a "[D]raft of points for Dr. Neuwelt to cover in statement/affidavit" on July 27, 2009. Subsequent billings reflect an additional 17.3 hours spent completing Dr. Neuwelt's statement/affidavit. (dkt. 142-1 at 17-18). A reviewing court must ensure that "the time expended [in furtherance of each task performed] was not excessive to the task...." Taylor v. Albina Cmty Bank, 2002 WL 31973738 *8 (D.Or. October 2, 2002). I will not continue to scrutinize individual entries in the statement of fees, but I find that Shaw's billing was excessive. Thus, I reduce Shaw's remaining hours (577.4) by 10%–a reduction of 57.74 hours. See id. at *16 ("A party is certainly free to pay its lawyers whatever it wishes, but it cannot expect to shift the cost of any...excesses to its opponent."). This reduces Shaw's hours to 519.66, leaving him with a fee of $77, 949 (519.66 x $150).

### B. Other Reductions

Although not raised by Providence, I find that there are additional reasons to reduce Lafferty's attorneys' bills. It is well settled, both in this District and elsewhere, that it is inappropriate to seek fees under a fee shifting statute for purely secretarial or clerical work. See

Page 9 - ORDER

Missouri v. Jenkins, 491 U.S. 274, 288 n. 10 (1989) ("purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate regardless of who performs them [the] dollar value [of a clerical task] is not enhanced just because a lawyer does it."); Frevach Land Co. v. Multnomah County, 2001 WL 34039133 (D. Or. Dec. 18, 2001) (inappropriate according to practices "prevailing...in [the District of Oregon] to bill a client or to seek fees under a fee-shifting statute for purely secretarial tasks."). I find that Glor and Shaw engaged in tasks that would have been easily delegable to either a paralegal or secretary. Glor's billing entries included reviewing the return of service on Providence Health Plan, reviewing the court notification of a Rule 16 conference and emailing the Laffertys about the conference, emailing and telephoning the court regarding rescheduling the Rule 16 conference, preparing a form to consent to magistrate jurisdiction, preparing a motion for an extension of case deadlines, and prepare motion for extension of time re: supplemental briefing. See e.g., dkt. #142-1 (Glor's billing entries from 10/22/2008, 11/13/2008, 12/15/2008, 12/22/2008, 1/09/2009, 3/06/2009, 11/08/2009). Therefore, I reduce Glor's hours by 1.4 or, more accurately since some of these hours were billed at $250 and some were billed at $275, by an amount of $372.5. This leaves Glor's fee at $58,092 ($58,465-$372.5). Shaw's billing entries included reviewing the order granting an extension. See e.g., dkt. #142-1 (Shaw's billing entries from 11/10/2009). Thus, I reduce Shaw's hours by 0.1 hours or $17.50, leaving him with a fee of $77,931.5 ($77, 949 - $17.50).

Finally, I reduce the 15 hours Glor anticipated spending preparing the reply to Providence's opposition to the fees and costs motion by 7 hours. In her Amended Declaration, Glor stated that she anticipated spending 15 hours of work at $300/hour preparing Lafferty's reply. (dkt. #142). Glor stated that she would "provide the precise time entries for the additional amount" when she filed

Page 10 - ORDER

Lafferty's reply. I have reviewed Lafferty's reply and supporting exhibits (dkt. #s 154, 155, 155-1) and cannot find any mention of Glor's time spent preparing such. Given that the reply is 11 pages long, the declaration is 2 pages, and the exhibit consists of copies of 2 emails, I find that 8 hours is a reasonable amount of time for the reply. Thus, I reduce Glor's billings by $2,100 (7 x 300), leaving a fee of $56,365 ($58,092 - $2,100).

### III.    Costs

Providence does not dispute the amount claimed in Lafferty's January 11, 2011 cost bill and the costs requested are sufficiently documented. I award Lafferty $389 in costs.

### Conclusion

For the reasons discussed above, I grant in part Lafferty's motion for attorneys' fees and costs (dkt. #s 134, 157). I award Lafferty $134,830 in attorneys' fees ($77,931.50 for Shaw, $56,365 for Glor, and $533.75 for Christiansen). I award costs of $389.

Payment shall be issued within 30 days from the date this order is filed unless Providence seeks to stay payment in light of the pending appeal to the Ninth Circuit. The Clerk of the Court is directed to enter judgment pursuant to this order.

IT IS SO ORDERED

DATED this 13th day of January 2011.

_____
THOMAS M. COFFIN
United States Magistrate Judge